# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KIMBOL R. COURVILLE** | : | **DOCKET NO. 05-0293** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is supported by substantial evidence in the record and is consistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On March 19, 2002, Kimbol R. Courville filed the instant applications for Disability Insurance Benefits and Supplemental Security Income payments. (Tr. 44A-D, 231-233). He alleged an inability to work since March 1, 2001, due to bi-polar mental disorder. (Tr. 44A, 231, 62). The claims were denied at the initial level of the administrative process. (Tr. 23-28, 234). Thereafter, plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ") on December 8, 2003. (Tr. 240-260). Nevertheless, in a February 21, 2004, written

decision, the ALJ determined that Courville was not disabled under the Act, finding at Step Four of the sequential evaluation process that he retained the residual functional capacity to perform past relevant work as a stocker and furniture deliverer. (Tr. 15-20). Courville appealed the adverse decision to the Appeals Council. However, on December 17, 2004, the Appeals Council denied Courville's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr.5-7).

On February 14, 2005, Courville filed the instant suit seeking review of the unfavorable administrative decision. He alleges the following error:

(1) the ALJ's finding that plaintiff could perform past relevant work as a stocker or furniture deliverer is not supported by substantial evidence.

## **STANDARD OF REVIEW**

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any

2

substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **LAW AND ANALYSIS**

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, then the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

Issue 1:

The ALJ found at Step Two of the sequential evaluation process that plaintiff suffered from bipolar disorder – a severe impairment. (Tr. 16, 19). However, the ALJ concluded that the

3

impairment was not severe enough to meet or medically equal any one of the impairments in the Listing of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id*. The ALJ then determined that Courville retained the residual functional capacity for unlimited exertional activity, with the ability to sustain attention and comprehend simple instructions, but the inability to work well with the general public. (Tr. 18-19).

Plaintiff first contends that the ALJ erroneously applied Public Law 104-121.[1] However, the ALJ found that plaintiff was not disabled, and that plaintiff's record of polysubstance abuse was not material to the determination of plaintiff's disability. (Tr. 17). Accordingly, we find no basis for this objection.

Plaintiff next argues that the ALJ erroneously determined that he had engaged in "gainful activity" because plaintiff was then enrolled in business school. Yet, the ALJ actually stated that "[a]side from the limitations of not working directly with the public and keeping to a low demand occupation, there is nothing in the evidence suggesting the claimant is incapable of utilizing the training he is getting in a field of gainful employment." (Tr. 18). In fact, the ALJ specifically found that plaintiff had *not* engaged in substantial gainful activity since the alleged onset date. (Tr. 16, 19). Thus, plaintiff's argument is unfounded.

Plaintiff next contends that the ALJ committed reversible error when he failed to obtain from plaintiff's treating mental health physician a current residual functional capacity as purportedly deemed necessary by the state's consultant, Sandra Durdin, Ph.D. Yet, we first observe that it was the non-examining agency physician, William L. Berzman, Ph.D., who

---

[1] "[I]f drug addiction or alcoholism is 'material' to a finding of disability, the individual concerned will not be considered disabled under the law." (Tr. 17).

indicated on a psychiatric review technique form that a residual functional capacity assessment was necessary. (Tr. 208). A brief perusal of the form reveals that the "RFC Assessment Necessary" box is included in a list of other boxes that track the five-step sequential evaluation process. *Id*. In other words, the review physician determined that Courville's condition involved a severe, medically determinable impairment, that did not meet or equal a listing, and thus an RFC assessment was necessary. *Id*. Relying upon the report of the consultative, examining physician,[2] Dr. Berzman completed the requisite Mental Residual Functional Capacity Assessment. Accordingly, this assignment of error lacks merit.

At Step Four of the evaluative process, the ALJ found that plaintiff's residual functional capacity permitted him to return to his past relevant work as a stocker and furniture deliverer – as he previously performed those jobs and as they are generally performed in the national economy. (Tr. 18-20).[3] In so concluding, the ALJ relied on vocational expert ("VE") testimony. *Id*.

Courville contends that there is a conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony. Citing DOT code numbers, plaintiff argues that the jobs identified by the VE require contact with the public that is precluded by plaintiff's residual functional capacity. (*See*, DOT 299.477-010 and 299.367-014). Yet, in his residual functional capacity assessment, the ALJ found only that plaintiff was unable to work well with the public – not that Courville should avoid *all* contact with the public. Moreover, this determination is

---

[2] Sandra B. Durdin, Ph.D.

[3] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)(citing, Social Security Ruling 82-61).

supported by substantial evidence. For instance, on June 14, 2002, Courville was seen by Sandra B. Durdin, Ph.D., for a psychological evaluation at the request of Disability Determination Services. (Tr. 201-203). Courville's attention span was variable, but adequate. *Id*. His pace was primarily even, and he was oriented in all spheres. *Id*. There was no evidence of hallucinations or delusions, and no evidence to suggest suicidal or homicidal ideation. *Id*. Durdin diagnosed mood disorder, NOS, without psychosis, and polysubstance abuse allegedly in remission. *Id*. She further diagnosed a personality disorder, NOS mixed. *Id*. Durdin opined that Courville could sustain attention, and could comprehend directions and retain them. *Id*. She further opined that he would not do well in a time pressured, high demand job[4] or one which requires *much* interaction with the public. *Id*. (emphasis added). Work should be limited to simple, low demand situations. *Id*.[5]

In other words, Courville needed to avoid "much" exposure to the public – not all exposure. The VE acknowledged that Courville's prior jobs as a stocker and furniture deliverer involved *some* contact with the general public, but not a lot of exposure. (Tr. 256-257). This

---

[4] An argument could be made that the ALJ's residual functional capacity assessment should have included a limitation requiring less demanding jobs. However, this hypothetical was posed to the VE who opined that Courville's prior jobs were not overly demanding. Thus, any error was harmless. *See, Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)(citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)).

[5] Similarly, on July 10, 2002, a Mental Residual Functional Capacity Assessment was completed by non-examining agency physician, William Berzman, Ph.D. (Tr. 204-206). He indicated that Courville had moderate limitations in his ability to: carry out detailed instructions; maintain attention and concentration for extended periods; and to interact appropriately with the general public. *Id*. No other limitations were indicated. *Id*. Of course, "[a]n ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991)(quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)).

testimony is consistent with Courville's residual functional capacity, and does not conflict with the DOT.

Plaintiff next argues that in response to the hypothetical posed by his representative, the VE conceded that plaintiff would be unable to hold and maintain his job. (Tr. 257-258). The hypothetical assumed that claimant was distracted by voices in his head, had daily thoughts of suicide, suffered from psychotic disorders, believed that his energy was drained by others around him, and was confused. *Id*. However, plaintiff acknowledged that he has not heard voices since he started taking medication. (Tr. 254). Moreover, despite daily thoughts of suicide, Courville did not plan on acting out those thoughts. (*See*, Tr. 255).[6] In short, the foundation for the hypothetical is lacking.

We also emphasize that the hypothetical posed to the VE need only incorporate the disabilities recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). In other words, the hypothetical should incorporate the "concrete *consequences* of a claimant's deficiencies." *Taylor v. Chater,* 118 F.3d 1274, 1278 (8th Cir. 1997)(emphasis added). Here, however, plaintiff's hypothetical assumed symptoms of plaintiff's mental impairment, not the resulting limitations.

For the foregoing reasons, we find that the ALJ's determination that plaintiff was not under a "disability" as defined by the Social Security Act is supported by substantial evidence and is free of legal error. Accordingly,

---

[6] Also, the non-examining agency physician indicated that Courville had no limitation in his ability to complete a normal workday and workweek without interruption. (Tr. 205). Likewise, plaintiff's work history supports a finding that he was able to maintain jobs for considerable periods. (*See*, Tr. 53).

IT IS RECOMMENDED that the Commissioner's decision be affirmed and the matter dismissed.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 8th day of February, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE